Judge Ewing
delivered the Opinion of the Court.
Emerson & Co. filed their bill against Grigsby and Thomas, enjoining part of a judgment recovered by Grigsby against them, in which Thomas was interested. They alleged that the writing,, upon which the judgment was recovered, was given for two lots of hogs, delivered by Thomas to them, at Saluda Gap, in South Carolina, in pursuance of a contract made with Grigsby. That the first lot contained three hundred and eighty-three hogs, and the second five hundred and eighty-eight. That when delivered — to save the trouble of weighing — the parties agreed to take the hogs at the average Kentucky weights, deducting ten pounds off each hog, for shrinkage on the road, and that Thomas was to furnish the Kentucky weights. That Thomas had disposed of twenty hogs out of the first lot, and thirty-eight out of the second, on the road, and, through fraud or mistake, had given in the whole Kentucky weights of the hogs, without deducting any thing for the hogs disposed of on the road, and that the value of the whole had been estimated and included in the note.
The answer denies every material allegation of the bill
The Circuit Court decreed a perpetuation of the injunction, as to 400 32; to-wit: $168 on account of the mistake in the first lot, and $232 32. in the second, From which decree the defendants have brought the case to this Court.
It is establishment by what we regard a pretty clear *252 preponderance of testimony, that the hogs were received at the average Kentucky weights, deducting ten pounds off each hog, and that the estimate was made from a memorandum furnished by Thomas. It is very evident that the Kentucky weight was the data upon which the complainants, in part, if not in whole, predicated their estimate of the average weights, at which the hogs were received, and that they relied upon Thomas for a faithful and honest exhibition of those weights. Though Thomas made a real or pretended offer, after the average was agreed on, to give $50 to be let off from the arrangement, and to weigh the hogs, and Hieronemus, one of the partners, refused, and intimated that he had made by the average agreed on, and though the weights fell short, he would not look to Thomas, nor would he be responsible in case they exceeded the estimate — this conclusion was based upon the false data furnished by Thomas. By that, he was deceived into the arrangement, and into his adherence to it. And he is no more precluded from taking advantage of the fraud, than if no such proposition had been made by Thomas, or declarations made by Hieronemus. Morality, as well as law, requires that the parties to a contract shall deal fairly and honestly with each other. And if an arrangement is superinduced by a false representation, or false exhibition of facts, by one party, upon which the other, placing reliance, is made to yield, and afterwards to adhere to the terms proposed, he should not thereby be precluded from redress.
Besides, it may be, that the proposition to give fifty dollars to be released from the agreement, was a stratagem— a feint, to rivet Hieronemus to the contract, which he had seduced him into, and thereby the more effectually to accomplish his fraud.
In the first lot of hogs, it appears by the testimony of R. Gordon, that Thomas purchased 178 hogs from his brother, weighing, in Kentucky, 44,826 pounds. In the list furnished to the complainant he is represented to have purchased 158 hogs only from Gordon, weighing 44,856 lbs. — thus making 158 hogs, which he delivered, weigh thirty pounds more than the whole 178 purchased *253 from him. He has' struck off twenty of the hogs to reduce the lot to the number of those delivered, but has retained the weight, and brought it into the account, to swell the average agreed on. If any doubt could arise on the testimony of Gordon, as to the number of hogs bought from his brother, it is strengthened by the following consideration. That if the weight proven by him, or that furnished by Thomas to the complainants, be averaged between 158 hogs only, it will make those hogs weigh some forty pounds more each than the average weight of any of the various parcels of hogs collected by him, to make up either of his droves. But, if 178 be the number assumed, the average weight will be upwards of two hundred and fifty — as high as the highest average weight of any of the parcels collected, and some twenty or thirty weight higher than an average of a large majority of the parcels.
We must conclude, therefore, that the weight of twenty hogs and thirty pounds over, has been included in the weights furnished by Thomas, for the Kentucky weights, and which twenty hogs had been before disposed of by him, on the road. And the twenty hogs, when the weight is ascertained by a ratable estimate, with the weight of the whole, and their value arrived at, according to the price agreed on, will amount to $>170 20. Add to this, $>1 09, the price of the thirty pounds added to the aggregate weight, and it will produce $171 29, which has been improperly included in the note, for the first lot of hogs, upon which judgment has been recovered.
A similar imposition has been practiced in the estimate of the Kentucky weights of the second lot of hogs, exhibited by Thomas. He gave in 235 hogs only, as purchased from G. Waller, weighing 59,462 lbs. — when he purchased 255 from Waller, all weighing the above weight. The weight of twenty hogs are here added, which were not delivered. Ascertaining their weight and value, by a similar ratable estimate with the whole lot, and it will produce $ 159 13. Add to this $9 894, the value of other small additions to the weights given in, over those proven by the witnesses, from whom the *254 purchases were made, and it makes, in all, $169 21, which is erroneously included in the note, through fraud or mistake* on account of the second lot. Which, when added to the sum ascertained as erroneously embraced in the first lot, will make $340 304: about $60 less than the amount estimated by the Circut Court. We know not upon what data the Circuit Court made its estimate. One thing is certain: though the complainant claims a deduction of more, there is no satisfactory proof in the cause, that we have been able to perceive, to justify the deduction of a greater sum from the note, than the sum above ascertained.
It is, therefore, the opinion of the Court, that the- decree of the Circuit Court be reversed, and the cause remanded, that the injunction may be perpetuated for the sum of three hundred and forty dollars thirty and a half cents, to take effect at the date of the note sued on, and dissolved with damages as to the residue, and the plaintiffs in error are entitled to their costs in this Court.